UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
CLERK

May 14, 2015

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

------------------------------------------------------X
JUAN C. BAEZ.

                    Plaintiff.

**ORDER**
13-CV-3876 (SJF)

        -against-

CAROLYN W. COLVIN.
Acting Commissioner of Social Security.

                    Defendant.
------------------------------------------------------X
FEUERSTEIN. J.

        Juan C. Baez ("plaintiff" or "claimant" or "Baez") commenced this action pursuant to 42

U.S.C. § 405(g) seeking judicial review of the final determination of defendant Commissioner of

Social Security Administration ("Commissioner") denying plaintiff's December 28. 2010

application for disability benefits. Now before the Court are the parties' cross-motions for

judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For

the reasons that follow. the Commissioner's motion is denied and plaintiff's motion is granted in

part and this case is remanded for further proceedings consistent with this opinion.

I.      BACKGROUND

        A.      Administrative Proceedings

        On December 28. 2010. plaintiff filed an application for social security disability benefits

claiming disability as of September 10. 2010 because of a back condition. diabetes. high

cholesterol and hypertension. [Docket Entry No. 15 (Transcript of Administrative Record ("Tr.")

193-96. 213)].

        On March 23. 2011. the Social Security Administration ("SSA") denied plaintiff's

application on the ground that he was not disabled under the Administration's rules. *Id.* at 89-96.

Plaintiff subsequently requested a hearing by an Administrative Law Judge (*id.* at 88) and on January 18, 2012, a hearing was held before Administrative Law Judge Seymour Rayner (the "ALJ"), at which plaintiff appeared with his attorney. *Id.* at 44-64. On February 1, 2012, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Social Security Act and therefore not entitled to disability insurance benefits. *Id.* at 66-79. In August 2012, the Appeals Council granted plaintiff's request for review, vacated the ALJ's February 1, 2012 decision, and remanded the matter for further proceedings for an evaluation of certain treating source evidence. *Id.* at 80-85. On January 23, 2013, plaintiff appeared with his attorney and testified at a second ALJ hearing. *Id.* at 29-43. On March 4, 2013, the ALJ issued a second unfavorable decision finding that plaintiff was not disabled (the "ALJ Decision"). *Id.* at 9-28. On May 29, 2013, the Appeals Council denied plaintiff's request for review, rendering the ALJ Decision the final decision of the Commissioner. *Id.* at 1-8; 274-277.

On July 11, 2013, plaintiff commenced this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Commissioner's final determination. [Docket Entry No. 1]. On November 11, 2013, the Commissioner filed an answer and served plaintiff with the administrative record. [Docket Entry No. 7]. On March 11, 2014, the parties cross-moved for judgment on the pleadings. [Docket Entry Nos. 10-15].

B.     Medical Evidence

1.     Plaintiff's Treatment Records

On June 2, 2010, plaintiff was examined by Dr. Leslie Theodore, M.D., an internist at Best Care Medical Practice, P.C. Tr. 368. Dr. Theodore's initial report noted that plaintiff was involved a car accident on May 28, 2010, sustained injuries to the neck, right shoulder and the lower back, and presented with pain in the neck, lower back and right shoulder. *Id.* Upon

examination. Dr. Theodore noted that plaintiff's motor skills tests were "normal and graded at 5/5 (5/5 normal) throughout all extremities" (*id.* at 369) and "[s]ensory evaluation of the upper and lower extremities revealed mild hyposthetic in C5-6 and L5-S1 dermatomal area bilateral." *Id.* Examination of plaintiff's cervical spine "showed evidence of tenderness and spasm on deep palpation of paravertebral musculature," a restricted range of motion, and "severe pain in the cervical spine that was aggravated by movement." *Id.* An examination of plaintiff's right shoulder revealed tenderness at palpation and decreased range of motion. *Id.* Examination of plaintiff's lumbar spine revealed "tenderness and spasm on deep palpation of the paraspinal musculature," a decreased range of motion, and severe back pain aggravated by movement. *Id.* at 370. Examinations of plaintiff's elbows, hands, knees, ankles, and feet were unremarkable and/or within normal limits. *Id.* at 369-70. It was observed that plaintiff "walked with a normal heel-toe gait." *Id.* at 370. Dr. Theodore diagnosed status post motor vehicle accident; acute traumatic strain/sprain of the cervical paraspinal muscles and ligaments; R/O cervical radiculities; acute traumatic sprain/strain of the lumbar paraspinal muscles and ligaments; low back pain; lumbar radiculities; contusion of the right shoulder. *Id.* Dr. Theodore ordered magnetic resonance imaging ("MRI") of plaintiff's cervical spine, right shoulder and lumbar spine, and recommended physical therapy three (3) to four (4) times per week for four (4) to six (6) weeks, as well as assistive devices for home use and acupuncture. *Id.*

At a follow-up examination with Dr. Theodore on July 2, 2010, plaintiff complained of intermittent neck, low back, shoulder, chest and hip pain. *Id.* at 372. Physical examination revealed decreased range of motion in plaintiff's neck and lumbar spine, straight leg raising test restricted to forty (40) degrees on the right and fifteen (15) degrees on the left, and decreased range of motion and pain in plaintiff's right shoulder. *Id.* at 373. MRIs showed herniated (disc)

Nucleus pulposus (HNP) at L5-S1 and mild impingement of the right shoulder. *Id.* at 374. Diagnostic impressions were cervical sprain/strain. R/O cervical radiculities, low back pain and lumbosacral sprain/strain. *Id.* at 375. Dr. Theodore recommended that plaintiff continue with physical therapy three (3) times per week. *Id.* at 376.

An MRI performed on plaintiff's right shoulder on June 15, 2010 revealed degenerative changes of the AC joint with some mild impingement of the supraspinatus muscle. *Id.* at 330. There was also a punctuate area of the fluid collection just in the marrow space abutting the region of the insertion of the long head of the biceps, which appeared to be independent at the time and possibly represented a small bony cyst. *Id.* An MRI on plaintiff's lumbar spine on June 29, 2010 revealed lumbar straightening with disc desiccation and a small right paracentral disc herniation at L5-S1. *Id.* An MRI on plaintiff's cervical spine on August 2, 2010 revealed cervical straightening consistent with cervical spasm. *Id.*

On August 27, 2010, plaintiff was evaluated by Dr. Sebastian Lattuga, M.D., F.A.A.O.S., who is board certified in orthopedics and spine surgery and Director of the Spine Surgery Division at Franklin North Shore LIJ Health System. *Id.* at 329. Plaintiff presented to Dr. Lattuga with neck, back, right arm and shoulder pain, upper and lower extremity radiation with numbness, tingling and dysethesias following a May 28, 2010 car accident. *Id.* Plaintiff described the pain as daily, constant, sharp shooting and persistent with a pain severity score of nine (9) out of ten (10). *Id.* A physical examination performed by Dr. Lattuga revealed: restricted range of motion, tenderness and spasms at plaintiff's cervical and thoracolumbar spines (*id.*), and that plaintiff's right and left upper and lower extremities were not within normal limits. *Id.* at 330. A neurological examination revealed decreased sensation in the C6, L5 and S1 nerve root distributions (*id.*), and normal coordination, normal gait, normal motor strength.

and symmetric reflexes. *Id.* Dr. Lattuga diagnosed plaintiff with cervical and lumbar spine radiculopathy, sprain, and herniated nucleus pulposus (*id.*) and advised him to refrain from any activity that would exacerbate his symptoms, such as heavy lifting, carrying or bending. *Id.* Plaintiff visited Dr. Lattuga for follow-up consultations on September 9, 2010 and September 13, 2010 and Dr. Lattuga's findings at those visits were consistent with his prior examinations of plaintiff. *Id.* at 332-335. After discussing treatment options with Dr. Lattuga at the September 13, 2010 follow-up consultation, plaintiff elected to proceed with posterior spinal fusion and laminectomy. *Id.* at 335. Dr. Lattuga discussed with plaintiff the risks, benefits, alternatives, success and failures of surgical versus non-surgical procedures. *Id.*

A follow-up evaluation by Dr. Theodore September 29, 2010 revealed that plaintiff was experiencing the same low back and hip pain at the level of 10/10, but that his neck pain was better. *Id.* at 378. The overall progression of the illness was indicated as "unchanged." *Id.* A physical examination revealed moderate muscle tenderness/spasm/swelling of trapezoids/paravertebral musculature, trigger points, and pain in low back (*id.* at 379), a normal range of motion in plaintiff's neck and upper extremities, a decreased range of motion in plaintiff's lumbar spine (*id.*), decreased and painful range of motion in plaintiff's hip joints, tenderness on palpation of plaintiff's hip, and straight leg raising restricted to ten (10) degrees on the right, ten (10) degrees on the left and five (5) degrees bilateral. *Id.* It was noted that plaintiff experienced difficulty sitting, standing, grooming, and in the kitchen, bathroom, and sexual activities, as well as bending, pushing, pulling, lifting due to general endurance, fast fatigue, and restricted range of motion. *Id.* at 380. Dr. Theodore noted that an MRI of the cervical spine revealed muscle spasms and straightening. *Id.* Diagnostic impressions were low back pain, lumbosacral sprain/strain and R/O lumbar radiculitis. *Id.* at 381. Dr. Theodore recommended

that plaintiff continue with physical therapy three (3) times per week, continue with acupuncture, chiropractic manipulation, massage therapy, follow up with orthopedic consult and take ibuprofen. *Id.* at 382.

On October 14, 2010, Dr. Howard Hawthorne, D.O., of South Shore Ocean Care, plaintiff's primary care physician since 2008, examined plaintiff in anticipation of his posterior spinal fusion and laminectomy. *Id.* at 284. Physical examination revealed that plaintiff's blood pressure was one hundred and twenty over eighty (120/80), he had a non-antalgic gait and appeared well. *Id.* Dr. Hawthorne noted that it was a "normal physical exam." *Id.*

On October 26, 2010, plaintiff underwent a posterolateral fusion at L5-S1, segmental pedicle fixation at L5-S1, lumbar laminectomy at L5-S1, facetectomy, foraminotomy, BMP implant, neurolysis at L5-S1 and fluoroscopy. *Id.* at 340-44. A November 4, 2010 post-operative evaluation by Dr. Lattuga indicated: plaintiff was "doing well post-operatively, however continue[d] to have pain and symptoms consistent with pre-operative conditions" (*id.* at 338), "satisfactory" lumbar x-rays taken that day (*id.*), tenderness and spasms and restricted range of motion in the lumbar spine (*id.*), right and left lower extremities not within normal limits (*id.*), and normal coordination, and motor strength, sensation and reflexes consistent with pre-surgery ability. *Id.* Dr. Lattuga diagnosed status post posterior spinal fusion and laminectomy, noted that plaintiff was "doing well post-operatively with improvement, however continue[d] to have some residual pain and symptoms consistent with pre-operative conditions" and recommended that plaintiff attend physical therapy and refrain from any activity that would exacerbate his symptoms such as lifting, carrying, bending and twisting. *Id.* Further post-

operative evaluations of plaintiff by Dr. Lattuga on December 16, 2010 and January 27, 2011 were consistent with these findings. *Id.* at 336-37.

On November 17, 2010, plaintiff returned to Dr. Theodore complaining of intermittent headaches and worsening lower back pain that was "constant" and worsened with bending, lying down, prolonged sitting, and walking (*id.* at 384), improved shoulder pain, and overall worsening of his illness. *Id.* A physical examination revealed severe tenderness in plaintiff's lower back, a normal range of motion in plaintiff's neck, a decreased range of motion in his lumbar spine, a straight leg raising test restricted to five (5) degrees on the right and five (5) degrees on the left, decreased range of motion in plaintiff's shoulder joints, and no gross deformity and full range of motion in plaintiff's lower extremities. *Id.* at 385. It was noted that plaintiff experienced difficulty sitting, standing, grooming, and in the kitchen, bathroom, and sexual activities, as well as bending, pushing, pulling, lifting due to general endurance, fast fatigue, and restricted range of motion, and that he was using a cane. *Id.* at 386. Diagnostic impressions were post traumatic headache, low back pain, lumbosacral sprain/strain and R/O lumbar radiculitis, left shoulder contusion, sprain R/O tear supraspinatus muscle in left shoulder. *Id.* at 387. Dr. Theodore recommended that plaintiff continue with physical therapy three (3) times per week, continue with acupuncture, chiropractic manipulation, massage therapy, follow up with orthopedic consult and take ibuprofen. *Id.* at 388.

On January 5, 2011, plaintiff returned to Dr. Theodore denying headaches, reporting that his lower back pain was better, his shoulder pain was consistent and he had mild improvement in the overall progression of his illness. *Id.* at 396. A physical examination revealed moderate/severe tenderness in plaintiff's lower back, a normal range of motion in plaintiff's neck, decreased range of motion in his lumbar spine, a straight leg raising test restricted to fifteen

(15) degrees on the right and the left, decreased range of motion and tenderness on palpation in his left shoulder joints, and no gross deformity and full range of motion in his lower extremities. *Id.* at 397. It was noted that plaintiff experienced difficulty sitting, standing, grooming, and in the kitchen, bathroom, and sexual activities, as well as bending, pushing, pulling, lifting due to general endurance, fast fatigue, and restricted range of motion, and that he was using a cane. *Id.* at 398. Diagnostic impressions were low back pain, lumbosacral sprain/strain, R/O lumbar radiculitis, sprain R/O tear supraspinatus muscle in left shoulder. *Id.* at 399. Dr. Theodore recommended that plaintiff continue with physical therapy three (3) times per week, continue with acupuncture, chiropractic manipulation, massage therapy, follow up with orthopedic consult and take ibuprofen. *Id.* at 400.

Plaintiff returned to Dr. Theodore on February 2, 2011, denying headaches, reporting that his intermittent low back pain was better and his shoulder pain level was a "zero (0)." *Id.* at 390. The overall progression of illness was noted as "mild improvement." *Id.* A physical examination revealed severe muscle tenderness, spasm, paravertebral musculature, and severe tenderness to plaintiff's low back. *Id.* at 391. The range of motion of plaintiff's neck was normal, there was a decreased range of motion of his lumbar spine and straight leg raising was restricted to thirty (30) degrees on the right and the left. *Id.* There was tenderness on palpation of plaintiff's right shoulder but no gross deformity and full range of motion in his lower extremities. *Id.* Neurological reports indicated no motor or sensory deficits. *Id.* It was noted that plaintiff experienced difficulty sitting, standing, grooming, and in the kitchen, bathroom, and sexual activities, as well as bending, pushing, pulling, lifting due to general endurance, fast fatigue, and restricted range of motion, and that he could ambulate independently but was using a

cane. *Id.* at 392. Diagnostic impressions were low back pain. lumbosacral sprain/strain. sprain R/O tear supraspinatus muscle in right shoulder. *Id.* at 393.

On March 10. 2011. plaintiff returned to Dr. Lattuga. *Id.* at 363. Dr. Lattuga noted that plaintiff was "doing well. with improvement of lumbar pain. however continue[d] to have some residual pain pain [sic] that [was] worse with lifting. carrying and bending. sitting. standing for prolonged periods." *Id.* A spine examination conducted by Dr. Lattuga on that date noted tenderness and spasms and restricted range of motion in the lumbar spine. and that the right and left lower extremities were not within normal limits. *Id.* A neurological examination revealed normal coordination and motor strength. sensation and reflexes consistent with pre-surgery ability. *Id.* Dr. Lattuga noted that plaintiff's lumbar x-rays taken that day were "satisfactory." *Id.* Dr. Lattuga diagnosed status post posterior spinal fusion and laminectomy and recommended that plaintiff attend physical therapy and refrain from any activity that would exacerbate his symptoms such as lifting. carrying. bending and twisting. *Id.* Dr. Lattuga reported consisted findings during plaintiff's June 14. 2011. July 28. 2011 and October 31. 2011 post-operative evaluations. *Id.* at 364-366.

On March 22. 2011. plaintiff visited Dr. Hawthorne complaining of headaches and recurrent back pain. *Id.* at 355. Physical examination revealed that plaintiff's blood pressure was one hundred and twenty over sixty (120/60). he was sixty-six (66) inches tall and weighed one hundred and eighty (180) pounds. *Id.* During a follow-up examination. plaintiff reported: chronic lumbar spine pain. posterior spinal fusion. laminectomy L5-S1 in 2010. diabetes mellitus Type II. hypertension. hyperlipidemia. and obesity (*id.* at 435). that he had been diagnosed with high blood pressure. diabetes. and other heart disease (*id.*) and that his medications were Lisinopril (10 m.g. daily). metformin (1000 m.g. twice daily). simvastatin (20

m.g. at bedtime), tramadol (50-100 m.g. between 6-8 pm), and cyclobenzaprine (10 m.g. 3x a day). *Id.* at 436. Plaintiff indicated that he watched tv, listened to the radio and read, but did not cook, clean, do laundry, shop, or provide childcare, and that he showered, bathed, and dressed with help. *Id.*

On December 20, 2011, Dr. Lattuga completed an assessment of plaintiff's ability to perform work-related activities and determined that plaintiff could occasionally lift ten (10) pounds or less but could never lift ten (10) to fifty (50) pounds, could stand and/or walk for a total of two (2) hours without interruption in an eight (8) hour work day; could sit for a total of two (2) hours without interruption in an eight (8) hour work day; could occasionally climb but could not bend, balance, stoop, crouch, kneel or crawl. *Id.* at 361-62. Dr. Lattuga also concluded that plaintiff could not push or pull, but could occasionally reach (including overhead) and could constantly feel/handle. *Id.* at 362. In addition, Dr. Lattuga concluded that plaintiff experienced environmental restrictions to heights, moving machinery, chemicals, dust, fumes, and humidity due to his impairments. *Id.*

On February 27, 2012, Dr. Lattuga noted that plaintiff was "doing well, with improvement of lumbar pain, however continue[d] to have some residual pain pain [sic] that [was] worse with lifting, carrying and bending, sitting, standing for prolonged periods." *Id.* at 434. A spine examination conducted by Dr. Lattuga on that date noted tenderness and spasms and restricted range of motion in the lumbar spine. *Id.* A neurological examination noted normal coordination and ambulation with a cane, and "sensation altered L5." *Id.* Dr. Lattuga noted that plaintiff's lumbar x-rays taken that day were "consistent with fusion." *Id.* Dr. Lattuga diagnosed lumbar radiculopathy and status post posterior spinal fusion and laminectomy L5-S1, referred plaintiff to pain management, and ordered him to attend physical therapy and refrain

from any activity that would exacerbate his symptoms such as lifting, carrying, bending and twisting. *Id.* At a follow-up visit on July 9, 2012, plaintiff was examined by Dr. Lattuga's colleague, Dr. Sukhbir Guram, M.D., who made clinical findings consistent with Dr. Lattuga's findings in February (*id.* at 433) but noted that plaintiff was totally, permanently disabled. *Id.* at 432.

From February 2012 through January 2013, Dr. Hawthorne conducted several examinations on plaintiff. *Id.* at 437-65. At a February 23, 2012 examination, Dr. Hawthorne noted that plaintiff presented with chronic back pain, with no relief from Tramadol or Ultracet (*id.* at 453) and diagnosed plaintiff with chronic back pain, diabetes mellitus type 2, and hyperlipidemia. *Id.* at 454. At a July 12, 2012 visit, Dr. Hawthorne completed a parking permit application for plaintiff in which he indicated that plaintiff was permanently disabled due to severe walking limitations as a result of an arthritic, neurological or orthopedic condition. *Id.* at 449. Plaintiff visited Dr. Hawthorne again on December 31, 2012 to refill his medications for his "intermittent bac [sic] pain." *Id.* at 442. At that visit, Dr. Hawthorne diagnosed plaintiff with diabetes, benign hypertension, hyperlipidemia, and lumbago. *Id.* Plaintiff again visited Dr. Hawthorne on January 8, 2013 for lab results and a follow-up visit. *Id.* at 437. At that visit, plaintiff's pain scale was noted as a zero (0) but "acute back pain" was also noted. *Id.* Dr. Hawthorne diagnosed plaintiff with backache, diabetes, benign hypertension, hyperlipidemia, and obesity. *Id.*

2.    SSA's Medical Consultants

On March 15, 2011, Dr. Ammaji Manyam, a consulting physician, performed an examination of plaintiff as a result of a referral by the Division of Disability Determination. Tr. 347-50. Upon physical examination, plaintiff had a normal gait and stance even without the cane

he brought with him, was able to walk on his heels and toes without difficulty and to squat fully,
needed no help changing for the exam or getting on or off the exam table, and was able to rise
from a chair without difficulty. *Id*. at 348-49. Dr. Manyam noted that plaintiff's cervical spine
and lumbar spine showed full flexion, extension, lateral flexion bilaterally, and fully rotary
movement bilaterally; plaintiff had full range of motion of shoulders, elbows, forearms, and
wrists bilaterally and full range of motion of hips, knees, and ankles bilaterally; plaintiff did not
have scoliosis, kyphosis, or abnormality in thoracic spine and had no evident subluxations,
contractures, ankyloses, or thickening, his joints were stable and nontender, and there was no
redness, heat, swelling or effusion. *Id*. at 349. Dr. Manyam noted a well-healed lumbar
laminectomy scar which was not inflamed, tender, or swollen. *Id*. Plaintiff's hand and finger
dexterity was observed as intact, his grip strength was 5/5 bilaterally, no sensory deficit was
noted and his strength in the upper and lower extremities was 5/5. *Id*. at 350. Dr. Manyam
diagnosed the plaintiff with low back pain following surgery for lumbar fusion (but noted that
there were no positive findings for plaintiff's back problems upon physical examination),
diabetes mellitus type 2 on treatment, hyptertension on treatment and in good control, and
hypercholesterolemia on treatment. *Id*. Dr. Manyam's medical source statement concluded that
plaintiff had "no limitations to physical activities." *Id*. Plaintiff told Dr. Manyam that his back
pain was "there all the time," was "aggravated with all the activities of bending, prolonged
standing, and prolonged sitting" and that "[w]hen it [was] aggravated, it [was] at a rate of 5/10"
but when he took pain medications "the pain scale [went] down to 2/10." *Id*. at 347. Plaintiff
told Dr. Manyam that he could not do much of anything because of his back pain; that he was
able to shower himself, he could not dress himself and needed help for dressing (though Dr.
Manyam observed that after the examination, plaintiff dressed himself without any help), and

that he spent his time watching TV, reading magazines, going to doctor's appointments and socializing with friends. *Id*. at 348.

On September 27, 2012, Dr. Jerome Caiati, a consulting physician, performed an examination of plaintiff on a referral by the Division of Disability Determination. *Id*. at 419-22. Upon physical examination, Dr. Caiti noted that plaintiff was obese. *Id*. at 420. Physical examination also revealed that plaintiff had a normal stance and a normal gait, with and without his cane, needed no help changing for the exam and was able to rise from a chair with minimal difficulty. *Id*. at 420. Plaintiff declined to attempt to walk on his heels and toes, to squat, or to get on and off the exam table. *Id*.

Dr. Caiati noted that plaintiff's cervical spine showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally, plaintiff did not have scoliosis, kyphosis, or abnormality in thoracic spine, and plaintiff had full range of motion of shoulders, elbows, forearms, and wrists bilaterally standing. *Id*. Plaintiff declined to perform lumbar spine range of motion tests. *Id*. Straight leg raising tests in the sitting position went up to seventy (70) degrees and plaintiff said it created lower back pain. *Id*. Examination of the range of motion of plaintiff's lower extremities revealed right and left hips flex one hundred and twenty (120) degrees, internal rotation of twenty (20) degrees with plaintiff indicating it created lower back pain; external rotation of eighty (80) degrees, range of motion of knees zero (0) to one hundred and forty (140) bilaterally, right and left ankles dorsiflex twenty (20) degrees, plantar flex forty (40) degrees. *Id*. at 420-21. Plaintiff had no evident subluxations, contractures, ankyloses, or thickening, his joints were stable and nontender, and there was no redness, heat, swelling or effusion. *Id*. at 421. Plaintiff's hand and finger dexterity was observed as intact, his grip strength was 5/5 bilaterally, pinch was 5/5 in all fingers to thumbs bilaterally, no sensory deficit

was noted and his strength in the upper and lower extremities was 5/5. *Id.* Dr. Caiati diagnosed the plaintiff with obesity, history of hypertension, history of diabetes, history of hyperlipidemia, and history of lumbar laminectomy and fusion. *Id.* Dr. Caiati's medical source statement concluded that plaintiff's ability to "[s]it, stand, walk, reach, push, and pull" was "unrestricted" but that he "could not assess" plaintiff's ability to "[b]end, climb, and lift." *Id.* Plaintiff told Dr. Caiati that he was unable to cook, clean, do laundry, go shopping or take care of his children, but that he showered, bathed and dressed himself, and watched TV and listened to the radio. *Id.* at 419.

Dr. Caiati completed a medical source statement of plaintiff's ability to perform work-related activities which indicated that plaintiff could sit, stand, and walk for a total four (4) hours without interruption and for a total of eight (8) hours in a work day. *Id.* at 424. Dr. Caiati's opinion was that plaintiff did not require the use of a cane to ambulate. *Id.* Dr. Caiati could not assess plaintiff's ability to lift/carry (*id.* at 423), his ability to use his feet (*id.* at 425), his postural activities (*id.* at 426), some environmental limitations (*id.* at 427) or his ability to walk a block at a reasonable pace on rough or uneven surfaces or climb a few steps at a reasonable pace with the use of a single hand rail (*id.* at 428), but was able to opine that plaintiff could continuously reach in all directions, including overhead, with both his right and left hands, that he could continuously handle, finger, feel and push/pull (*id.* at 425), that plaintiff's impairments did not affect his hearing or vision (*id.* at 426), that plaintiff could shop, travel without a companion for assistance, ambulate without use of a wheelchair, walker or two (2) canes or two (2) crutches, use standard public transportation, prepare a simple meal and feed himself, care for his personal hygiene, and sort, handle or use paper/files. *Id.* at 428.

C.    Non-Medical Evidence

An adult disability report (Form SSA-3368) (Tr. 212-19) identifies plaintiff's alleged impairments as back. diabetes. high cholesterol and hypertension. and indicates that plaintiff completed the third grade in the Dominican Republic and had work experience as a kitchen helper from January 1999 to September 2010.  *Id*. at 213-215.  Plaintiff's work history report (Form SSA-3369) indicates that plaintiff worked as a kitchen helper from January 1999-September 2010.  *Id*. at 220.

Plaintiff's function report indicates that because of his injuries. he is "unable to work and perform daily living functions without pain and discomfort" (*id*. at 229). that he has "difficulty falling asleep and staying asleep" (*id*.). that his injuries have caused him "pain and difficulty" in his ability to dress. bathe. care for hair. and shave (*id*. at 230).  The function report indicates that plaintiff "cannot prepare elaborate meals" (*id*.). that he only goes outside to see doctors (*id*. at 231). that he does not drive a car because he is "in too much pain to drive safely" (*id*.). that he can only walk one (1) block before having to stop and rest for three (3) to five (5) minutes (*id*. at 234). that he cannot "socialize as [he] used to" because of his injuries (*id*. at 233). that his ability to engage in lifting. standing. walking. sitting. climbing stairs. kneeling. squatting. reaching. using hands. seeing. hearing and talking "all have been negatively affected" by his illness. injuries or conditions (*id*.). that he uses a cane when walking or standing (*id*.). that "he must take frequent breaks" when completing a task he starts (*id*. at 234). and must "take frequent breaks [when reading or watching television] because [he] cannot stay in the same position for long." *Id*. at 232.

The report indicates that plaintiff is able to fix himself meals of soup. sandwiches. and microwavable meals daily (*id*. at 230). do "light dusting and cleaning" (*id*. at 231). shop in stores

for light groceries as needed (*id.*), pay his bills, count change, handle a savings account and use a checkbook/money orders (*id.* at 232), and that he reads and watches television daily (*id.*), and spends his time visiting with friends and family and talking on the phone. *Id.*

D.     Plaintiff's Hearing Testimony

At his two hearings before ALJ Raynor on January 18, 2012 and January 23, 2013, plaintiff gave the following testimony (Tr. 29-64):

Plaintiff was born on October 29, 1969 in the Dominican Republic. *Id.* at 49.   He came to the United States in 1996 and is a permanent resident.   *Id.*   Plaintiff attended elementary school in the Dominican Republic and cannot read or write in English.   *Id.*   Plaintiff was employed as a busboy in the kitchen of a restaurant from 1997 until September 10, 2010.   *Id.* at 34-35, 50-51.   His job responsibilities included washing the dishes, sweeping and mopping the floor, and cleaning the kitchen.   *Id.* at 50.   Plaintiff was involved in a motor vehicle accident and lumbar spine surgery on October 26, 2010 worsened his injuries.   *Id.* at 35-36.   Plaintiff testified that "[a]fter the surgery, [he] [had] to be taking this very strong medication to help [him] with the pain" (*id.* at 36) and that the medication he takes makes him "sleepy" and he has "to go to bed." *Id.* at 37.   Plaintiff also testified that he has problems sitting down, cannot stand up for more than ten (10) minutes at a time, and cannot lift anything or bend down.   *Id.* at 37-38.   Plaintiff resides with his children and his wife, who helps him with some of his personal items, including showering and putting on his pants.   *Id.* at 33, 59.

E.     ALJ's Decision

After applying the five (5)-step sequential analysis set forth in C.F.R. § 404.1520, the ALJ found that plaintiff was "not disabled" within the meaning of the Act.   Tr. 15.   Specifically, the ALJ determined: (1) the plaintiff meets the insured status requirements of the Social Security

Act through December 31, 2015 (*id.* at 17); that plaintiff has not engaged in substantial gainful activity since September 10, 2010, the alleged onset date (*id.*); (3) that plaintiff has the following severe impairments: residuals of a herniated dics at L5-S1 status post laminectomy and fusion, and obesity (*id.*); (4) that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (*id.*); (5) that plaintiff has the residual function capacity to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a) (*id.* at 18); (6) that plaintiff is unable to perform any past relevant work at a kitchen helper (*id.* at 22.); (7) that plaintiff was born on October 29, 1969 and was forty (40) years old, which is defined as a younger individual age eighteen (18) — forty-four (44), on the alleged disability onset date (*id.*); (8) that plaintiff is not able to communicate in English, and is considered in the same way as an individual who is illiterate in English (*id.*); (9) transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the plaintiff has transferable job skills (*id.* at 23); (10) considering the plaintiff's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (*id.*); and (11) the plaintiff "has not been under a disability, as defined in the Social Security Act, from September 10, 2010, through the date of this decision." *Id.*

## II.     DISCUSSION

### A.     Standards of Review

#### 1.     Rule 12(c)

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings."

Fed. R. Civ. P. 12(c). The standard applied to a Rule 12(c) motion is the same as that applied to a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). To survive such a motion, "a complaint must contain sufficient factual matter…to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted). The court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Id.* at 679; *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003). The court is limited "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991).

        2.      Review of Determinations by the Commissioner of Social Security

Upon review of the final decision of the Commissioner, a court may enter "judgment affirming, modifying, or reversing the decision…with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A district court must consider whether "there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Brault v. Social Sec. Admin., Com'r*, 683 F.3d 443, 447 (2d Cir. 2012) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)). "[I]t is not the function of the reviewing court to decide *de novo* whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). "[S]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks and citation omitted). "In determining whether the [Commissioner's] findings were supported by

substantial evidence. the reviewing court is required to examine the entire record. including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (internal quotation marks and citation omitted).

Although the Commissioner's findings of fact are binding as long as they are supported by substantial evidence. this deferential standard of review is inapplicable to the Commissioner's conclusions of law or application of legal standards. *See Byam v. Barnhart.* 336 F.3d 172. 179 (2d Cir. 2003); *Townley v. Heckler.* 748 F.2d 109. 112 (2d Cir. 1984). Rather. courts have a statutory and constitutional duty to ensure that the Commissioner has applied the correct legal standards. regardless of whether the Commissioner's decision is supported by substantial evidence. *See Pollard v. Halter.* 377 F.3d 183. 188-89 (2d Cir. 2004). If a court finds that the Commissioner has failed to apply the correct legal standards. the court must determine if the "error of law might have affected the disposition of the case." *Id.* at 189. If so. the Commissioner's decision must be reversed. *Id.; see also Kohler v. Astrue.* 546 F.3d 260. 265 (2d Cir. 2008). If the application of the correct legal standard could lead only to the same conclusion. the error is considered harmless and remand is unnecessary. *See Zabala v. Astrue.* 595 F.3d 402. 409 (2d Cir. 2010).

B.      Evaluation of Disability Under the Social Security Act

Pursuant to 42 U.S.C. § 423(d)(1)(A). the term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability benefits are only available where an individual has a physical or mental impairment "that results from anatomical. physiological. or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). For the purposes of this section:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

Pursuant to regulations promulgated under the Act, the Commissioner is required to apply a five (5) step sequential analysis to determine whether an individual is disabled under Title II of the Act. 20 C.F.R. § 404.1520; *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). The first step of the sequential analysis requires the Commissioner to determine whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i) and (b). "Substantial work activity" "involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(a). "Gainful work activity" "is the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). If a claimant is doing "substantial gainful activity," the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not engaged in any "substantial gainful activity," the Commissioner proceeds to the second step.

The second step requires the Commissioner to consider the medical severity of the claimant's impairment to determine whether he or she has a "severe medically determinable physical or mental impairment that meets the duration requirement in C.F.R. § 404.1509, or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(ii). An impairment, or combination of impairments, is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §

404.1520(c). To meet the duration requirement, the claimant's impairment must either be "expected to result in death, [or] it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. The Commissioner will proceed to the next step only if the claimant's impairment is medically severe and meets the duration requirement.

At the third step, the Commissioner considers whether the claimant has a medically severe impairment that "meets or equals one of [the] listings in appendix 1 to subpart P of [20 C.F.R. Part 404 of the Act] and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment meets or equals any of the listings and meets the duration requirement, the Commissioner will find the claimant is disabled. 20 C.F.R. § 404.1520(d). When a claimant's impairments fail to meet or equal any of the Listings, the Commissioner must assess the claimant's residual functional capacity ("RFC") before proceeding to the fourth and fifth steps of the sequential analysis. 20 C.F.R. §§ 404.1520(e); 404.1545(a)(5). The Commissioner's RFC assessment must be based on "all of the relevant medical and other evidence" in the case record, including "any statements about what [the claimant] can still do that have been provided by medical sources" and any "descriptions and observations of [the claimant's] limitations from [his or her] impairments, including limitations resulting from [his or her symptoms], such as pain, provided by [the claimant] or [other persons]." 20 C.F.R. § 404.1545(a)(3). In addition, the Commissioner must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). Both a "limited ability to perform certain physical demands or work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or

crouching)" (20 C.F.R. § 404.1545(b)), and a "limited ability to carry out certain mental

activities, such as limitations in understanding, remembering, and carrying out instructions, and

in responding appropriately to supervision, coworkers, and work pressures in a work setting" (20

C.F.R. §404.1545(c)), may reduce a claimant's ability to do past or other work. 20 C.F.R. §

404.1545(e) provides that:

> [w]hen [a claimant] ha[s] severe impairment(s), but [his or her]
> symptoms, signs, and laboratory findings do not meet or equal those
> of a listed impairment in [the Listings], [the Commissioner] will
> consider the limiting effects of all [the claimant's] impairment(s),
> even those that are not severe, in determining [his or her] residual
> functional capacity. Pain or other symptoms may cause a limitation
> of function beyond that which can be determined on the basis of the
> anatomical, physiological or psychological abnormalities
> considered alone...In assessing the total limiting effects of [a
> claimant's] impairment(s) and any related symptoms, [the
> Commissioner] will consider all of the medical and nonmedical
> evidence...

20 C.F.R. § 404.1545(e). The RFC considers whether "[the claimant's] impairment(s), and any

related symptoms, such as pain, may cause physical and mental limitations that affect what [the

claimant] can do in a work setting." 20 C.F.R. § 404.1545(a). The RFC is "the most [the

claimant] can still do despite [his or her] limitations." *Id.*

At the fourth step, the Commissioner compares the RFC assessment "with the physical

and mental demands of [the claimant's] past relevant work." 20 C.F.R. § 404.1520(a)(1)(iv) and

(f). If the claimant can still do his or her past relevant work, the claimant is not disabled. 20

C.F.R. § 404.1520(a)(1)(iv). If the claimant cannot do his or her past relevant work, the

Commissioner proceeds to the fifth and final step of the sequential analysis.

At the fifth step, the Commissioner considers the RFC assessment "and [the claimant's]

age, education and work experience to see if [the claimant] can make an adjustment to other

work." 20 C.F.R. § 404.1520(a)(1)(v). If the claimant can make an adjustment to other work,

the claimant is not disabled. *Id*. If the claimant cannot make an adjustment to other work, the claimant is disabled. *Id*. The claimant bears the burden of proving first four (4) steps of the sequential analysis, while the Commissioner bears the burden at the last step. *See Talavera*, 697 F.3d at 151.

C.  Application of the Five-Step Sequential Analysis

The ALJ determined that the plaintiff had the residual functional capacity to perform a full range of sedentary work as defined in 20 C.F.R. § 404.1567(a). Tr. 18. Plaintiff contends that the ALJ erred in finding that plaintiff has the RFC to perform a full range of sedentary work and is not disabled because: (1) the ALJ failed to follow the treating physician rule because the opinion of Dr. Lattuga as the treating orthopedic surgeon should have been given controlling weight [Docket Entry No. 13 (Memorandum of Law in Support of Plaintiff's Cross Motion for Judgment on the Pleadings ("Pl. Mem.")) at 11-15]; and (2) the ALJ did not conduct a proper credibility analysis. *Id.* at 15-17.

1.  Treating Physician Rule

Social Security Regulations provide that a treating physician's opinion on the nature and severity of a claimant's symptoms is entitled to controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [claimant's] case record." 20 C.F.R. § 404.1527(c)(2). The treating physician rule "mandates that the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). The rule "governs the weight to be accorded the medical opinion of the physician who treated the claimant...relative to other medical evidence before the fact-finder, including opinions of other

physicians." *Schisler v. Heckler*, 787 F.2d 76, 81 (2d Cir. 1986). "The regulations also require the ALJ to set forth her reasons for the weight she assigns to the treating physician's opinion." *Shaw*, 221 F.3d at 134.

However, "the opinion of the treating physician is not afforded controlling weight where...the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004), *see also Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) ("It is an accepted principle that the opinion of a treating physician is not binding if it is contradicted by substantial evidence, and the report of a consultative physician may constitute such evidence.") (internal citations omitted). Where there is substantial evidence in the record that conflicts with the treating physician's opinion, the opinion will not be afforded controlling weight (*see Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)), and "the less consistent that opinion is with the record as a whole, the less weight it will be given." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999), *see also* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight [it] will [be] give[n]..."). "[G]enuine conflicts in the medical evidence are for the Commissioner to resolve" (*Burgess v. Astrue*, 537 F.3d 117, 128 (2d. Cir. 2008) (quoting *Veino*, 312 F.3d at 588)), and the "ultimate finding of whether a claimant is disabled and cannot work" is "reserved to the Commissioner." *Schnetzler v. Astrue*, 533 F. Supp. 2d 272, 287-88 (E.D.N.Y. 2008). "[I]t is up to the agency, and not the court, to weigh the conflicting evidence in the record" and "[t]herefore, when evaluating the evidence, the court may not substitute its own judgment for that of the Secretary, even if it might justifiably have reached a different result upon de novo review." *Schnetzler*, 533 F. Supp. 2d at 285 (internal quotations and citations omitted). An ALJ who refuses to accord controlling

weight to the medical opinion of a treating physician must consider the following factors to determine how much weight to give the opinion: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the [SSA's] attention that tend to support or contradict the opinion. *Halloran*, 362 F.3d at 32; 20 C.F.R. § 404.1527(c). The Commissioner must provide "good reasons" for the weight attributed to the treating physician's opinion. *Halloran*, 362 F.3d at 32-33; 20 C.F.R. § 404.1527(c)(2).

The ALJ noted that Dr. Lattuga's opinion "was not given great weight" because it "was not fully supported by the objective medical evidence and was contradicted by the claimant's testimony regarding his activities of daily living" and "was outweighed by the opinions of Dr. Caiati and Dr. Manyam." Tr. 22. In declining to afford Dr. Lattuga's opinion controlling weight, the ALJ weighed the 20 C.F.R. § 404.1527(c)(2) factors, finding that while Dr. Lattuga "personally examined the claimant on numerous occasion" and "is a specialist in orthopedic surgery" (*id.*), his opinion was not "fully supported by the objective medical evidence and was contradicted by the claimant's testimony regarding his activities of daily living." *Id.*

Dr. Lattuga's opinion that plaintiff could stand/walk and sit for two (2) hours in an eight (8) hour work day (*id.* at 361-62) was inconsistent with the opinions of Dr. Manyam, who noted that plaintiff was "able to rise from a chair without difficulty" (*id.* at 349) and concluded that plaintiff had "no limitations to physical activities" (*id.* at 350), and Dr. Caiati, whose physical examination of plaintiff revealed that plaintiff had a normal stance and a normal gait, needed no help changing for the exam, was able to rise from a chair with minimal difficulty (*id.* at 420), that plaintiff's ability "[s]it, stand, walk, reach, push, and pull" was "unrestricted" (*id.* at 421)

and that plaintiff could sit, stand, and walk for four (4) hours without interruption and for a total of eight (8) hours in a work day. *Id.* at 424. While Dr. Caiati noted he could not assess plaintiff's ability to left up to ten (10) lbs. (*id.* at 423). Dr. Lattuga himself opined that plaintiff could occasionally lift up to ten (10) lbs. *Id.* at 361. Finally, Dr. Lattuga's opinion as to plaintiff's ability to sit for a total of two (2) hours per day (*id.*) "was contradicted by [plaintiff's] testimony regarding his activities of daily living" (*id.* at 22), particularly plaintiff's testimony that he was able to sit through the long flights to and from the Dominican Republic in 2012 without any physical complications. *Id.* at 22, 61; *see also Filocomo v. Chater*, 944 F. Supp. 165, 169 (E.D.N.Y. 1996) ("the ability to sit for prolonged periods is an essential inquiry in determining whether a claimant has the residual functional capacity to perform sedentary work.") (internal citations omitted).

Moreover, Dr. Lattuga's opinion was not fully supported by objective medical evidence, including plaintiff's post-surgery lumbar x-rays, which were consistently "satisfactory." (Tr. 336-38, 363). Plaintiff claims that Dr. Lattuga's opinion was supported by the medical evidence, however the three MRIs to which plaintiff points all predate plaintiff's lumbar spine surgery and do not reflect his post-surgical condition, and the findings of Dr. Theodore, Dr. Hawthorne and Dr. Guram do not support Dr. Lattuga's opinion because none of these physicians opined on plaintiff's ability to sit, stand or lift during the course of an average workday[1] (*see* 20 C.F.R. § 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing

---

[1]    The ALJ noted that "Dr. Theodore indicated in his reports that the claimant had some difficulties with his activities of daily living. Dr. Theodore, however, did not state that these reports represented his opinion. Rather, the record indicates that these reports represent statements made by the claimant. Therefore, these statements were not treated as opinion evidence." Tr. 22.

is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met); *Carvey v. Astrue*, 380 F. App'x 50, 52 (2d Cir. 2010) ("in the Social Security context, a person must be able to lift ten pounds occasionally, sit for a total of six hours, and stand or walk for a total of two hours in an eight-hour workday to be capable of 'sedentary work'")) and Dr. Guram's statement that the plaintiff was "permanently disabled" (Tr. 432) is "not considered a 'medical opinion' under the treating physician's rule to which controlling weight should be assigned because it represents an opinion on an issue reserved to the Commissioner," *Earl-Buck v. Barnhart*, 414 F. Supp. 2d 288, 293 (W.D.N.Y. 2006); *see also Pope v. Barnhart*, 57 F. App'x 897, 899 (2d Cir. 2003) (holding that a treating physician's conclusion that a plaintiff is "completely disabled" may not be given controlling weight because this issue is reserved for the Commissioner); *see also* 20 C.F.R. § 404.1527(d).

Because Dr. Lattuga's opinion was inconsistent with substantial evidence in the record, including the opinions of two (2) medical doctors and plaintiff's own testimony, the ALJ did not commit legal error in declining to afford Dr. Lattuga's opinion great weight. *See Sizer v. Colvin*, 592 F. App'x 46, 47 (2d Cir. 2015) ("ALJ properly accorded 'little weight' to the non-specialist medical opinion of Appellant's treating physician because it was inconsistent with 'other substantial evidence in the case record' and, therefore, undeserving of 'controlling weight.'") (quoting 20 C.F.R. § 416.927(c)(2)); *see also Mongeur*, 722 F.2d at 1039 ("the opinion of a treating physician is not binding if it is contradicted by substantial evidence, and the report of a consultative physician may constitute such evidence") (internal citations omitted); *Atwater v. Astrue*, 10-civ-420S, 2012 WL 28265, at *4 (W.D.N.Y. Jan. 5, 2012), *aff'd*, 512 F. App'x 67 (2d Cir. 2013) (ALJ properly found treating physician's opinion inconsistent with record as a whole

where opinion conflicted with opinions of state agency medical consultants and was inconsistent with claimant's reported activities).

> ### 2. Plaintiff's Credibility

Plaintiff challenges the ALJ's credibility analysis because other than stating that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however the plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely credible for the reasons explained in this decision" (Tr. 18), "the ALJ "made no further analysis of the claimant's credibility." Pl. Mem., at 16.

In "determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account…but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted). The ALJ retains discretion to assess the credibility of a claimant's testimony regarding disabling pain and "to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Because it is the function of the agency, not reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant, we will defer to its determinations as long as they are supported by substantial evidence." *Reynolds v. Colvin*, 570 F. App'x 45, 49 (2d Cir. 2014) (internal citations omitted). The Second Circuit has "repeatedly held that a claimant's testimony concerning his pain and suffering is not only probative on the issue of disability, but "may serve as the basis for establishing disability, even when such pain is unaccompanied by positive

clinical findings or other 'objective' medical evidence.'" *Hankerson v. Harris*, 636 F.2d 893,

895 (2d Cir. 1980) (quoting *Marcus*, 615 F.2d at 27). Thus, where there is a "medically

determinable impairment[] that could reasonably be expected to produce [the claimant's]

symptoms, such as pain," the ALJ "must then evaluate the intensity and persistence" of the

symptoms to determine how the symptoms limit a claimant's capacity for work. 20 C.F.R. §

404.1529(c)(1). "Further, because a claimant's symptoms, such as pain, 'sometimes suggest a

greater severity of impairment than can be shown by objective medical evidence alone,' once a

claimant has been found to have a pain-producing impairment, the Commissioner may not reject

the claimant's statements about his pain solely because objective medical evidence does not

substantiate those statements." *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 349-50

(E.D.N.Y. 2010) (citing 20 C.F.R. § 404.1529(c)(2)-(3)).

In assessing a claimant's allegations concerning the severity of his symptoms, an ALJ

must engage in a two-step analysis. First, "the ALJ must decide whether the claimant suffers

from a medically determinable impairment that could reasonably be expected to produce the

symptoms alleged." *Genier*, 606 F.3d at 49 (citing 20 C.F.R. § 404.1529(b)). Second, "[i]f the

claimant does suffer from such an impairment...the ALJ must consider 'the extent to which [the

claimant's] symptoms can reasonably be accepted as consistent with the objective medical

evidence and other evidence of record." *Id.* If plaintiff's testimony concerning the intensity,

persistence or functional limitations associated with his impairments is not fully supported by

clinical evidence, the ALJ must consider additional factors in order to assess that testimony,

including: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity

of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side

effects of any medications taken to alleviate the pain; (5) any treatment, other than medication,

that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. *See Meadors v. Astrue*, 370 Fed. Appx. 179, 183 n.1 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vii)). An ALJ who finds that a claimant is not credible must do so "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence." *Rivera v. Astrue*, No. 10-civ-4324, 2012 WL 3614323, at *14 (E.D.N.Y. Aug. 21, 2012) (quoting *Taub v. Astrue*, No. 10-civ-2526, 2011 WL 6951228, at *8 (E.D.N.Y. Dec. 30, 2011)).

Here, the ALJ summarized claimant's testimony "that as a result of his impairments he has back pain and loses his balance" (Tr. 18), "that he falls asleep when he takes his medication" and that "he cannot lift or bend down." *Id.* The ALJ then found that although "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms" (*id.*), his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credibly for the reasons explained in [the] decision." *Id.* Specifically, in the decision, the ALJ stated that "[t]he claimant's ability to sit through the long flights to the Dominican Republic and back contradict his claim that he cannot sit for long periods." *Id.* at 22. While the ALJ stated that he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and SSRs 96-4p and 96-7p" (*id.* at 18), "he did not analyze those factors or incorporate them into his analysis" and did not "indicate how he balanced the various factors." *Simone v. Astrue*, No. 08-civ-4884, 2009 WL 2992305, at *11 (E.D.N.Y. Sept. 16, 2009) (remanding where the ALJ "did not offer

any analysis of the factors prescribed for evaluating subjective pain"). The only factor that the ALJ specifically considering in assessing plaintiff's credibility was his daily activities, noting that "claimant's ability to sit through the long flights to the Dominican Republic and back contradict his claim that he cannot sit for long periods." Tr. 22. However a claimant's daily activities is only one of the factors an ALJ must weigh in determining a claimant's credibility (*see* 20 C.F.R. § 404.1529(c)(3)) and the ALJ failed to properly consider the additional factors in 20 C.F.R. § 404.1529(c)(3) "with sufficient specificity to permit a reviewing court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence." *Correale-Englehart v. Astrue*. 687 F. Supp. 2d 396, 435-36 (S.D.N.Y. 2010). An ALJ must "consider each of the factors set forth in § 404.1529(c)(3)" and may not "simply selectively choose evidence in the record that supports his conclusion" or "mis-characterize a claimant's testimony or afford inordinate weight to a single factor, because "[a] claimant need not be an invalid to be found disabled under the Social Security Act...If on remand the ALJ again reaches step four of his analysis, he should give proper weight to [claimant's] testimony, including consideration of all of the factors identified above as required by SSR 96 7p, and should not base a finding on [his] ability to undertake essential daily tasks..." *Meadors*. 370 F. App'x at 185 n.2 (internal quotations and citations omitted).

The ALJ's failure to conduct a proper credibility analysis requires remand for a proper credibility assessment which discusses the seven factors listed in 20 C.F.R. § 404.1529(c). *See Grosse v. Comm'r of Soc. Sec.*, No. 08-civ-4137, 2011 WL 128565, at *5 (E.D.N.Y. Jan. 14, 2011) (ALJ "committed legal error" because the ALJ "wholly failed to consider factors (2) through (7)" in its credibility analysis); *Felder v. Astrue*. No. 10-civ-5747, 2012 WL 3993594, at *15 (E.D.N.Y. Sept. 11, 2012) ("Because the ALJ did not discuss the all the applicable factors

set forth in 20 C.F.R. § 404.1529(c)(3)(i)-(vii) in making her credibility determination analysis, the ALJ has committed legal error."); *Kane v. Astrue*, 942 F. Supp. 2d 301, 314 (E.D.N.Y. 2013) ("The ALJ's lack of specificity and failure to meet Social Security Administration requirements for evaluating the credibility of Plaintiff's subjective complaints require remand.").

On remand, the ALJ should assess claimant's credibility, in light of the factors in 20 C.F.R. § 404.1529(c) and all the information in his file, before determining plaintiff's residual functional capacity. To the extent the ALJ determines that any of claimant's statements are inconsistent with medical evidence in the record, the ALJ should specify the statements and the evidence in the record, and explain why he chooses to discredit the statements with reference to the applicable regulatory factors. *See* 20 C.F.R. § 404.1529(c)(3).

III.   CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is denied and plaintiff's cross-motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is granted in part insofar as this case is remanded for further proceedings consistent with this opinion.

**SO ORDERED**.

<div style="margin-left: 50%;">

s/ Sandra J. Feuerstein
Sandra J. Feuerstein
United States District Judge

</div>

Dated: May 14, 2015
       Central Islip, New York